UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                            Criminal No. 18-cr-108-LM
                                      Opinion No. 2020 DNH 079

Shariff Britton


# O R D E R

Defendant, Shariff Britton, is currently serving a 60-month term of imprisonment for one count of possession with intent to distribute a controlled substance.  Due to the threat to his health posed by the potential spread of COVID-19 in the prison facility where he is currently housed, defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Doc. no. 16.  The government objects.  The court held a telephonic hearing on defendant's motion on May 11, 2020.


## STANDARD OF REVIEW

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A).  18 U.S.C. § 3582(c)(1)(A) provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)  extraordinary and compelling reasons warrant such a reduction

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release).  Under this statute, a district court may properly consider a motion for compassionate release under three circumstances: (1) the motion is filed by the Director of the Bureau of Prisons ("BOP"); (2) the motion is filed by defendant after he exhausts all his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) the motion is filed by defendant 30 days after defendant requested BOP to petition for compassionate release on his behalf.  18 U.S.C. § 3582(c)(1)(A).  For the purposes of this order, the court will refer to the two alternative avenues for a defendant to petition the court directly for compassionate release (exhaust administrative rights to appeal or wait 30 days after request to BOP) as the statute's "exhaustion requirement."

Once a motion for compassionate release is properly before the court, the court must then determine if defendant is eligible for release.  The statutory language quoted above requires that defendant show that "extraordinary and compelling reasons warrant" a reduction in his sentence, that the court consider the factors set forth in 18 U.S.C. § 3553(a) to the extent applicable, and that the reduction be "consistent" with the Sentencing Commission's applicable policy statements.  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy statement regarding compassionate release adds the requirement that the court find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

In short, a court may reduce a term of imprisonment under the compassionate release provision if it: (1) finds that extraordinary and compelling reasons warrant the reduction; (2) finds that the defendant will not be a danger to the safety of any other person or the community; and (3) considers the sentencing factors outlined in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; see also United States v. Sapp, No. 14-CR-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020); United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019).  The defendant has the burden of showing that he or she is entitled to a sentence reduction.

United States v. Ebbers, No. S402CR11443VEC, 2020 WL 91399, at
*4 (S.D.N.Y. Jan. 8, 2020).  And the court has "broad discretion
in deciding whether to grant or deny a motion for sentence
reduction."  United States v. Paul Gileno, No. 3:19-CR-161-
(VAB)-1, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020)
(internal quotation marks omitted).

## BACKGROUND

In July 2019, defendant was arrested for possessing with
intent to distribute a controlled substance (cocaine) in
violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II).
He stipulated to detention pending trial and was recommended for
participation in the Therapeutic Community Program at the
Strafford County House of Corrections.  On September 5, 2019,
defendant pleaded guilty to the charge.  On December 17, 2019,
this court sentenced defendant to a term of imprisonment of 60
months and four years of supervised release.

After sentencing, defendant was medically cleared by the
Strafford County House of Corrections for transfer to another
facility.  Defendant was eventually transferred to the
Metropolitan Detention Center ("MDC") Brooklyn, but it is
unclear precisely when that transfer occurred.[1]  Defendant was

---

[1] Defendant represents that he has been at MDC Brooklyn for
"many months."  Doc. no. 16 at 3.  By contrast, the government

moved to MDC Brooklyn as a transit point on the way to his ultimate destination—a federal prison in Pennsylvania.

Defendant was destined for the Pennsylvania facility due to his need for specific medical testing and treatment available there, including a colonoscopy.  Defendant requires testing and treatment in relation to several underlying health conditions: Crohn's disease, gastro-esophageal reflux disease ("GERD"), and eustachian tube dysfunction.[2]  Now, because of transfer restrictions implemented in response to the COVID-19 pandemic, defendant is stuck at MDC Brooklyn without access to the medical testing and treatment he needs.  He contends that his inability to access this treatment is causing him excruciating stomach pain, increased defecation, and fatigue.  Defendant also alleges that he experiences heart or chest pains or palpitations for which he claims he needs further testing.

On April 15, 2020, defendant told his attorney that he would be filing a request for compassionate release with BOP that day.  Defendant has offered no proof of that submission,

---

represents that BOP counsel informed it that defendant arrived at MDC Brooklyn on February 28, 2020.  The court is inclined to credit the government's representation because it identifies a specific date and is not contradicted by defendant's medical records.  All the medical records submitted under seal by the parties reflect medical appointments at MDC Brooklyn that occurred on February 29, 2020 or later.

[2] Both parties have submitted medical records under seal that confirm these diagnoses.

and the government was not able to acquire proof of the request from BOP.  Nevertheless, on April 18, defendant's counsel filed a formal request for his compassionate release or for home confinement.  Doc. no. 16-3.  BOP denied that request on April 23.  See doc. no. 21-1.  It stated that defendant was not eligible for home confinement because he is a "holdover inmate" (i.e. he is not there permanently but in transit to another facility) and denied his compassionate release request because his medical conditions did not qualify as an extraordinary or compelling reason for release.  See id.

On April 27, defendant filed the instant motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  He asserts that he is eligible for compassionate release because his risk of contracting COVID-19 is high due to the unsafe conditions at MDC Brooklyn and his co-occurring chronic health conditions put him at heightened risk for severe illness if he does catch the virus.  There is no indication in the record that defendant has appealed BOP's denial of his compassionate release request or otherwise exhausted his administrative appeals.[3]  And

---

[3] Defendant argued at the hearing that he has exhausted his administrative appeals because the warden denied his request for compassionate release.  The statute, however, requires that defendant "fully exhaust all administrative rights to appeal" BOP's denial, not simply that he receive a denial from BOP.  18 U.S.C. § 3582(c)(1)(A).  Federal regulations outline that appeals process: defendant must appeal BOP's denial within the appropriate timeframe to the Regional Director, and if that

30 days have not yet passed since his April 18 request.[4]
Defendant argues that he need not wait for those 30 days to pass
before petitioning the court directly because the exhaustion
requirement of the compassionate release statute can be excused
on the basis of equitable exceptions such as irreparable harm,
futility, or urgent circumstances, which he says are present
here.  The government objects, arguing that the statutory
exhaustion requirement is mandatory and therefore cannot be
excused.

## DISCUSSION

Over the last two months, federal courts have confronted a
tidal wave of compassionate release requests by inmates based on
the threat posed by the presence of the highly contagious COVID-
19 virus in the close quarters of the prison environment.
Courts addressing the issue of whether the exhaustion
requirement of 18 U.S.C. § 3582(c)(1)(A) is excusable in the
context of this global pandemic have diverged: some have held

---

appeal is denied, he must appeal again to the General Counsel to
receive a final administrative decision.  See 28 C.F.R. §
571.63(a); 28 C.F.R. § 542.15(a).  There is no evidence that
defendant has completed that appeals process.

[4] Defendant argues that he has satisfied the 30-day lapse
requirement because MDC Brooklyn was "on notice" over 30 days
ago of the COVID-19 pandemic and defendant's heightened health
risk in relation to the virus.  See doc. no. 16 at 19.
Defendant cites no authority in support of this argument and the
court finds it unconvincing.

the exhaustion requirement mandatory, while others have held
that it is subject to equitable exceptions.  Compare, e.g.,
United States v. Lugo, No. 2:19-CR-00056-JAW, 2020 WL 1821010,
at *4-5 (D. Me. Apr. 10, 2020) (holding that statutory
exhaustion requirement is mandatory and describing split of
authority), with United States v. Scparta, No. 18-CR-578 (AJN),
2020 WL 1910481, at *7-8 (S.D.N.Y. Apr. 20, 2020) (holding that
exhaustion requirement is subject to equitable exceptions).
After careful and thorough consideration, the court agrees with
the apparent majority of courts that have reached the
unfortunate conclusion that the exhaustion requirement of the
compassionate release statute constitutes a mandatory claim-
processing rule that is not subject to equitable exceptions.


I.   Jurisdictional Requirement or Claim-Processing Rule

     As a threshold matter, defendant argues that §
3582(c)(1)(A)'s exhaustion requirement is non-jurisdictional:
that is, failure to comply with the exhaustion requirement does
not divest the court of jurisdiction.  Instead, defendant
contends that the exhaustion requirement is a nonmandatory
claim-processing rule.  The government does not dispute that the
exhaustion requirement is non-jurisdictional but asserts that it
is a mandatory claim-processing rule that has not been met here.

A jurisdictional rule is one that "governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction," while a claim-processing rule is one that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011). This distinction is meaningful because, under a claim-processing rule, a party may voluntarily waive a plaintiff's failure to exhaust or may forfeit the defense of failure to exhaust by failing to timely raise it. See Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1849 (2019); United States v. Reyes-Santiago, 804 F.3d 453, 458 (1st Cir. 2015). By contrast, an opposing party may raise a jurisdictional defense at any time and the court must consider any jurisdictional issues sua sponte. See id.

The court need not decide whether the exhaustion requirement at issue is jurisdictional or a claim-processing rule. Even assuming in defendant's favor that the requirement is non-jurisdictional and instead a claim-processing rule, the court concludes, as will be explained in detail below, that the exhaustion requirement constitutes a mandatory claim-processing rule. For such a mandatory rule, the court must "enforce" the rule where, as here, the lack of exhaustion has been raised by the opposing party. See Fort Bend, 139 S. Ct. at 1849. Thus,

the outcome would be the same under this statute whether the court categorized the exhaustion requirement as jurisdictional or a claim-processing rule.  See United States v. Miamen, No. CR 18-130-1 WES, 2020 WL 1904490, at *2 (D.R.I. Apr. 17, 2020) (acknowledging circuit and district court split about whether § 3582(c) generally is jurisdictional, but finding that court need not reach the question because even if exhaustion requirement is non-jurisdictional result would be the same); Lugo, 2020 WL 1821010, at *3 (same).  Thus, the court will treat the exhaustion requirement at issue as a claim-processing rule.  The question remains, however, whether that claim-processing rule is mandatory or non-mandatory.


II.  Mandatory or Non-Mandatory Claim-Processing Rule

Defendant argues that the exhaustion requirement at issue is subject to equitable exceptions because it is a "non-mandatory" claim-processing rule.  See doc. no. 16 at 20-21.  The Supreme Court's decision in Ross v. Blake, 136 S. Ct. 1850 (2016) provides a roadmap for this court's analysis of whether the exhaustion requirement in the compassionate release statute is mandatory or non-mandatory.  In Ross, the Court considered whether the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA") is mandatory or whether the court could read-in a "special circumstances" exception to the

statute.  Ross, 136 S. Ct. at 1855.  The Fourth Circuit had

ruled that the PLRA's exhaustion requirement was not absolute

and that there may be "special circumstances" that would justify

a prisoner's failure to exhaust.  Id. at 1856.

The Supreme Court disagreed, distinguishing between

statutorily-based and judicially-crafted exhaustion

requirements.  Id. at 1856-57.  It explained that "judge-made

exhaustion doctrines, even if flatly stated at first, remain

amenable to judge-made exceptions."  Id. at 1857.  "But a

statutory exhaustion provision stands on a different footing."

Id.  This is so because Congress has set the rules for the

statutory exhaustion provision "and courts have a role in

creating exceptions only if Congress wants them to."  Id.

In analyzing whether the PLRA imposes a mandatory

exhaustion requirement, the court looked first to the statutory

text and then to the PLRA's legislative history.  See id. at

1856-58.  The PLRA provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  Id. at

1856 (quoting 42 U.S.C. § 1997(e)).  The court explained that

the statute's "mandatory language means a court may not excuse a

failure to exhaust, even to take [special] circumstances into

account." Id. at 1856.  In other words, Congress's clear statutory mandate foreclosed the possibility of judicial discretion to craft extra-textual exceptions to the exhaustion requirement.  See id. at 1857.  The Court also held that the legislative history of the PLRA—showing that Congress intended to replace a prior weak exhaustion regime with an "invigorated" one—supported the mandatory nature of the exhaustion requirement.  Id. at 1857-58.  Finally, the Court observed that, though the exhaustion requirement is mandatory, the PLRA's text includes its own exception to exhaustion: that the administrative remedies must be "available."  Id. at 1856.

Like in Ross, the exhaustion requirement at issue here emanates from the statutory text, not judicial doctrine.  See Ross, 136 S. Ct. at 1857.  For that reason, the court turns first to the text of § 3582.  See id. at 1856-57.  Section 3582(b) provides that "a judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment."  18 U.S.C. § 3582(b).  The Supreme Court has acknowledged that such a final judgment "may not be modified by a district court except in limited circumstances."  Dillon v. United States, 560 U.S. 817, 824 (2010).  The compassionate release provision, § 3582(c)(1)(A), provides one of those limited circumstances.

The provision states in relevant part that:

> The court <u>may not</u> modify a term of imprisonment once it has been imposed <u>except that</u>--
> (1) in any case--
>> (A) the court, upon motion of the Director of the Bureau of Prisons, <u>or</u> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A) (emphases added).  The plain text of the provision states that the court may not modify a term of imprisonment once imposed except in one of the three outlined circumstances.  Although the statute does not use the traditional mandatory language of "shall," the construction of "may not . . . except" speaks in mandatory terms.  See Ross, 136 S. Ct. at 1856 (translating mandatory language of "shall bring no action" to the more conversational "may not bring any action").  This language evinces legislative intent to limit the court's authority to consider compassionate release motions only under the three delineated circumstances outlined in the statute.

The text of the statute provides no exceptions to this limit on judicial authority.  The court may consider a defendant's direct petition if defendant has either fully exhausted all administrative rights to appeal BOP's failure to

bring a motion on his behalf, or if defendant has waited for 30 days to lapse after his request to BOP, whichever is earlier. The statute thus provides two alternative ways for defendant to meet the exhaustion requirement.  The first option—appealing BOP's denial—offers defendant a traditional road to exhaustion. The second option—waiting for 30 days to pass—provides defendant an expedited route to exhaustion.  The 30-day lapse option might even be viewed as an "exception" to the alternative of exhaustion of all administrative appeals.  See United States v. Epstein, No. CR 14-287 (FLW), 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (describing 30-day lapse option as an exception to the exhaustion requirement and a "built-in accelerant to judicial review"); United States v. Gross, No. 15-CR-769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) (describing 30-day lapse rule as a "built-in futility exception"); cf. Ross, 136 S. Ct. at 1858-59 (observing that "available" language in the PLRA acted as a textual exception to exhaustion requirement).  Even viewed as a built-in exception to the more traditional exhaustion of administrative appeals, the 30-day lapse option is stated in no less mandatory terms. Additionally, the two options to achieve exhaustion should be construed narrowly given the court's already limited authority to modify a sentence once imposed.  See Dillon, 560 U.S. at 824. Defendant must meet the statutory exhaustion requirement in one

14

of the two ways spelled out in the statute before the court may consider his direct request for release.

The statutory text admits no other possible "exceptions" and leaves no room for judicial discretion.  Instead of providing the clear mandate that defendant wait 30 days before directly petitioning the court, Congress could have provided for greater judicial discretion by saying that defendant could petition the court directly after, for example, "waiting a reasonable amount of time under the circumstances."  But Congress did not use such broad language.

Further, the text of the statute itself demonstrates that Congress knows how to carve out an exception for special or urgent circumstances if it so desires.  Section 3582(d) outlines an expedited process for inmates who are diagnosed with a terminal illness, including that any request for compassionate release submitted by such an inmate must be processed by BOP within 14 days.  18 U.S.C. § 3582(d)(2)(A)(iv).  Thus, Congress knows how to include language providing for expedited review in the event of exigent or unique circumstances.  It did not, however, include such language in § 3582(c)(1)(A).  See United States v. Edwards, No. 3:13-CR-00012-1, 2020 WL 1987288, at *10 (M.D. Tenn. Apr. 27, 2020) ("[I]f Congress intended an exception to the otherwise mandatory statutory 30-day waiting period based on exceptional circumstances, a national emergency, or strained

federal government resources, it would have so indicated by prescribing such an exception in the statute."). Thus, the plain language of the compassionate release provision, read in the context of the whole statute, demonstrates that the exhaustion requirement is mandatory and not subject to equitable exceptions.

The legislative history of the First Step Act, which amended the compassionate release provision in 2018, also supports the conclusion that the administrative exhaustion requirement is mandatory and not subject to equitable exceptions. See Ross, 136 S. Ct. at 1857-58 (considering PLRA's legislative history). There is no doubt that Congress passed the First Step Act to help increase the use and transparency of compassionate release and to expedite the process. See First Step Act of 2018, PL 115-391, December 21, 2018, 132 Stat 5194; 164 Cong. Rec. H. S7314-02 (Dec. 5, 2018), 2018 WL 6350790 (statement of Sen. Cardin, co-sponsor of First Step Act). Prior to passage of the First Step Act, prisoners could not directly petition the court for compassionate release; only BOP could request release on a prisoner's behalf. See United States v. Willingham, No. CR 113-010, 2019 WL 6733028, at *1 (S.D. Ga. Dec. 10, 2019). BOP, however, seldom exercised that authority. See United States v. Rodriguez, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

The First Step Act removed BOP as the compassionate release gatekeeper by permitting prisoners to directly petition the court for release.  But the amendment neither eliminated BOP's role completely nor opened the floodgates to any and all direct petitions from prisoners.  Instead, Congress imposed the exhaustion requirement at issue here.  That requirement strikes an important balance between competing interests: BOP's interest in assessing in the first instance whether the prisoner is a good candidate for release and the prisoner's interest in a prompt and meaningful review of his request for compassionate release.  It is telling that even though one of the goals of the First Step Act was to expedite review of compassionate release requests, Congress chose to impose a 30-day waiting period as one method of exhaustion.  This evinces legislative intent that no matter how urgent a prisoner's request, BOP should still have 30 days to weigh in.

Congress gave no indication in the First Step Act's legislative history or text that it intended any exceptions— equitable or otherwise—to apply to this carefully crafted scheme.  Given the clear and mandatory text of the statute and its legislative history, the court may not take a "freewheeling approach to exhaustion" here.  Ross, 136 S. Ct. at 1855. Excusing the exhaustion requirement of the statute would, in effect, read in an extra-textual exception to the statute.  Such

result is clearly foreclosed by Ross.  See id. at 1855, 1862
(holding that Fourth Circuit erred by reading in "special
circumstances" exception to mandatory exhaustion requirement).
Thus, the court concludes that the text and legislative history
of the compassionate release provision demonstrate that its
exhaustion requirement is mandatory and not subject to equitable
exceptions.  See, e.g., Miamen, 2020 WL 1904490, at *3
(concluding that compassionate release statute's administrative
exhaustion requirement is mandatory and not excusable); Lugo,
2020 WL 1821010, at *3 (same); United States v. Holden, No.
3:13-CR-00444-BR, 2020 WL 1673440, at *10 (D. Or. Apr. 6, 2020)
(same); see also United States v. Raia, 954 F.3d 594, 597 (3d
Cir. 2020) (observing that because defendant had not received an
adverse decision from BOP or waited 30 days, exhaustion
requirement presented a "glaring roadblock foreclosing
compassionate release").


    III. Distinguishing Contrary Authority

    The court does not find any of defendant's arguments to the
contrary persuasive.  The central thrust of defendant's argument
is that the exhaustion requirement here is subject to several
equitable exceptions, including irreparable harm and futility.
Defendant draws on a number of different authorities in support
of this argument.

Defendant appears to rely on United States v. Scparta, ___
F. Supp. 3d ___, 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) to
argue that Supreme Court precedent supports the conclusion that
the exhaustion requirement here, even if mandatory, is subject
to equitable exceptions.  See doc. no. 16 at 22; see Scparta,
2020 WL 1910481, at *5.  In Scparta, the court confronted the
same question presented here: whether the court may excuse the
exhaustion requirement of the compassionate release provision
for equitable reasons like futility.  Scparta, 2020 WL 1910481,
at *4-8.  Scparta states that the Supreme Court has reserved the
question whether mandatory claim-processing rules are subject to
equitable exceptions.  Id. at *5.  And, it says, the Supreme
Court has held that even a mandatory statute of limitations is
subject to a rebuttable presumption in favor of equitable
tolling.  Id.  Scparta then reasons that the exhaustion
requirement set forth in the compassionate release provision is
unique: one-part traditional exhaustion requirement (exhaustion
of administrative appeals) and one-part "timeliness requirement"
(30-day lapse).  Id. at 5-6.  Viewing the unique structure of
the exhaustion requirement in the context of the text and
history of the statute, the court concluded that the exhaustion
requirement—particularly the 30-day lapse provision—is amenable
to equitable exceptions.  See id. at 6-8; see also United States

v. Russo, No. 16-CR-441 (LJL), 2020 WL 1862294, at *5-7 (S.D.N.Y. Apr. 14, 2020) (employing similar reasoning).

This court respectfully disagrees with the reasoning in Scparta and other similar cases on several grounds. First, it is true that mandatory claim-processing rules imposing statutes of limitation are "normally subject to a rebuttable presumption in favor of equitable tolling." Holland v. Florida, 560 U.S. 631, 645-46 (internal quotation marks omitted). But that presumption does not apply where "tolling would be inconsistent with the text of the relevant statute." Young v. United States, 535 U.S. 43, 49 (2002) (internal quotation marks omitted). Even assuming that the 30-day lapse provision has some "features" of a timeliness statute, the court finds application of equitable principles like tolling inconsistent with the text of the compassionate release provision, as explained in detail above.[5]

Second, the court disagrees that the 30-day lapse provision can be characterized as akin to a statute of limitations or

---

[5] The court also observes that in both Holland and Young the Supreme Court highlighted the equitable nature of the legal schemes at issue in holding that equitable tolling applied. See Holland, 560 U.S. at 646 (presumption in favor of equitable tolling reinforced by fact that equitable principles have traditionally governed substantive habeas law); Young, 535 U.S. at 50 (presumption in favor of equitable tolling strengthened by fact that bankruptcy courts apply principles and rules of equity jurisprudence). By contrast, the court's authority to modify a sentence after imposition does not derive from principles of equity; it emanates from and is circumscribed by statute. See 18 U.S.C. § 3582(b)-(c).

other timeliness requirement.  Cf. Scparta, 2020 WL 1910481, at
*6.  A statute of limitations rule "prescribes a period within
which certain rights . . . may be enforced."  Young, 535 U.S. at
47; see also CTS Corp. v. Waldburger, 573 U.S. 1, 8 (2014)
("Statutes of limitations require plaintiffs to pursue diligent
prosecution of known claims." (internal quotation marks
omitted)).  Rather than prescribing a time within which a
prisoner must request compassionate release, the statute here
imposes a waiting period before which the prisoner may not file
a request.  This 30-day waiting period is "consistent with one
of the bedrock principles underlying administrative exhaustion—
to permit the agency, with its expertise and with its
responsibility over the movant, to make a decision in the first
instance." Epstein, 2020 WL 1808616, at *4.  Because the
purpose and function of the 30-day waiting period is
fundamentally different than that of a statute of limitations,
the court finds it inappropriate to apply the equitable
presumptions applicable to statutes of limitation here.

Finally, the court acknowledges that the Supreme Court has
reserved the question "whether mandatory claim-processing rules
may ever be subject to equitable exceptions." Fort Bend County,
139 S. Ct. at 1849 n.5 (quoting Hamer v. Neighborhood Hous.
Servs. of Chicago, 138 S. Ct. 13, 18 n.3 (2017) (brackets
omitted); see also Kontrick v. Ryan, 540 U.S. 443, 457 (2004)

("Whether the [Bankruptcy] Rules, despite their strict limitations, could be softened on equitable grounds is therefore a question we do not reach."). However, the Court has also made clear that it will "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001); see also Ross, 136 S. Ct. at 1856-57; Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002) ("[T]here is no futility exception to the PLRA exhaustion requirement." (internal quotation marks omitted)). Defendant has not cited any First Circuit cases post-Ross where equitable exceptions were applicable to a mandatory statutory exhaustion requirement. As explained above, the court concludes that the text and legislative history of the compassionate release provision are clear, mandatory, and leave no wiggle room for this court to apply equitable exceptions.

Defendant next relies on Washington v. Barr, 925 F.3d 109 (2d Cir. 2019) in support of his argument that the statutory exhaustion requirement at issue here is subject to equitable exceptions including irreparable harm and futility. See doc. no. 16 at 20, 22-23, 26. There is a line of district court cases that rely on Washington to hold that the exhaustion requirement of the compassionate release provision may be excused for reasons of irreparable harm and futility. See,

e.g., United States v. McCarthy, No. 3:17-CR-0230 (JCH), 2020 WL
1698732, at *3 (D. Conn. Apr. 8, 2020); United States v. Colvin,
No. 3:19CR179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2,
2020); United States v. Perez, __ F. Supp. 3d __, 2020 WL
1546422, at *2 (S.D.N.Y. Apr. 1, 2020).  These cases rely on the
Second Circuit's statement in Washington that "[e]ven where
exhaustion is seemingly mandated by statute or decisional law,
the requirement is not absolute."  Washington, 925 F.3d at 118;
see also Perez, 2020 WL 1546422, at *2 (quoting that language).
Washington then goes on to outline the recognized exceptions to
exhaustion: futility, the absence of adequate relief, and undue
prejudice.  Washington, 925 F.3d at 118-19.

    Washington, however, involved a judge-made exhaustion
requirement grafted on to the Controlled Substances Act—not a
statutorily-mandated exhaustion scheme.  Id. at 118 (reasoning
that "[a]lthough not mandated by Congress," requiring exhaustion
was consistent with the text and structure of the Controlled
Substances Act).  For that reason, Washington is distinguishable
from this case and the Second Circuit's statement that "[e]ven
where exhaustion is seemingly mandated by statute . . . the
requirement is not absolute" is mere dicta.  Id. at 118
(emphasis added); see Lugo, 2020 WL 1821010, at *4 n.1
(collecting growing trend of cases viewing Washington as
inapposite to whether § 3582(c)(1)(A)'s exhaustion requirement

is subject to equitable exceptions).  Given this distinction, the court also finds unpersuasive the district court cases that have relied on Washington to conclude that the exhaustion requirement at issue here is subject to the equitable exceptions of futility and irreparable harm.  See, e.g., Epstein, 2020 WL 1808616, at *4 n.4 (finding Perez and similar cases unpersuasive "because [Washington] dealt only with a judicially created exhaustion requirement, not a statutory one"); Holden, 2020 WL 1673440, at *9 (finding Perez "unpersuasive because it is unsupported by law").

Defendant also cites Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74 (1st Cir. 1997) in support of the proposition that the First Circuit has identified three broad sets of equitable exceptions that apply when the interests of the individual weigh heavily against requiring the exhaustion of administrative remedies.  Doc. no. 16 at 24-25.  But that decision concerned an exhaustion regime set up by administrative procedure—not by Congress.  See Portela-Gonzalez, 108 F.3d at 77 (explaining that Congress has excluded Navy Exchange personnel from requirements of the Administrative Procedure Act and has not otherwise mandated that employees exhaust administrative remedies as a prerequisite to suit).  The First Circuit reasoned that because Congress was silent on the issue of exhaustion, the district court had discretion to relax or excuse the exhaustion

requirement under certain circumstances.  See id.  The First
Circuit acknowledged, however, that "exhaustion of administrative
remedies is absolutely required if explicitly mandated by
Congress."  Id. at 77.  In contrast to the exhaustion
requirement in Portela-Gonzalez, Congress has explicitly
mandated exhaustion under the compassionate release statute.
Therefore, the equitable exceptions outlined in Portela-Gonzalez
are inapposite here.

    IV.  Summary

In sum, the court concludes that the exhaustion requirement
of § 3582(c)(1)(A) is a mandatory claim-processing rule and that
the text and legislative history of the statute foreclose the
applicability of equitable exceptions.  The court does not reach
this conclusion lightly.  It is indisputable that the COVID-19
pandemic is unprecedented and poses a special risk to
individuals who are currently incarcerated, especially those who
are particularly vulnerable due to serious, chronic health
issues or age.  In short, inmates' lives are on the line.  But
the court's hands are tied by the compassionate release statute.
"Congress may of course amend the law at any time," Barton v.
Barr, ___ S. Ct. ___, 2020 WL 1941965, at *10 (U.S. Apr. 23,
2020), to remove or amend the exhaustion requirement.  Until

then, the court is constrained by the law as enacted by
Congress.

V.    Recommendation to BOP for Home Confinement

As an alternative to compassionate release, defendant
requests that the court recommend to BOP that he serve the
remainder of his sentence on home confinement.  The government
objects to this alternative relief.

Under the circumstances, the court finds it inappropriate
to make such a recommendation to BOP.  Defendant has only just
begun serving his 60-month sentence.  He has over three years
left to serve on a 5-year sentence.  The court is sympathetic to
the fact that defendant describes himself as in need of medical
care and in great pain due to gastrointestinal problems.
However, he has not submitted medical records indicating that
he has been diagnosed with a health condition listed by the CDC
guidelines as putting him at especially high risk for severe
illness from COVID-19.[6]  Given the current record, the court does
not find defendant to be a priority candidate warranting a
recommendation for home confinement.

---

[6] CDC, People Who are at Higher Risk for Severe Illness,
(last visited May 9, 2020) https://www.cdc.gov/coronavirus/2019-
ncov/need-extra-precautions/people-at-higher-risk.html (listing
underlying conditions such as lung disease, serious heart
conditions, and diabetes).

**CONCLUSION**

For the foregoing reasons, the court denies without prejudice defendant's request for compassionate release and his alternative request for a recommendation to BOP that he be placed on home confinement (doc. no. 16).  Defendant may, of course, renew his request for compassionate release after he has satisfied the compassionate release statute's exhaustion requirement.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 12, 2020

cc:  Counsel of Record.
     U.S. Probation
     U.S. Marshal